IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | | |
|---|---|---|
| LADONNA P. ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 2:12-CV-01456-JO |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of | ) | OPINION AND ORDER |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

JONES, J.,

Plaintiff Ladonna Roberts appeals the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. The court has jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

## PRIOR PROCEEDINGS

Roberts alleged disability beginning in July 2007 due to arthritis, incontinence, residual effects of an acoustic neuroma, headaches, sleep apnea, carpal tunnel syndrome, deafness in the left ear, and Bell's palsy. Admin. R. 159, 163.

The ALJ applied the sequential disability determination process described in 20 C.F.R. section 404.1520. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ found Roberts's ability to work adversely affected by arthritis, obesity, and deafness in the left ear. Admin. R. 14.

The ALJ found that, despite her impairments, Roberts retained the residual functional capacity ("RFC") to perform light work that did not require her to bend, stoop, squat, crouch, crawl, stand longer than 90 minutes at a time, or work at heights or near moving machinery. In addition, Roberts could only work if permitted a bathroom break at least once each hour. Admin. R. 16.

The ALJ elicited testimony from a vocational expert ("VE") regarding the physical and mental demands of Roberts's former occupation as an accounts receivable clerk and medical billing clerk. The VE testified that these were sedentary, skilled and semi-skilled occupations and did not require activities precluded by Roberts's RFC. Admin. R. 45-46. The ALJ therefore found that Roberts retained the RFC to perform the accounts receivable and medical billing jobs as they are generally performed in the national economy. Admin. R. 20. The ALJ concluded that Roberts was not disabled within the meaning of the Social Security Act. Admin. R. 21.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). Under this standard, the Commissioner's factual findings must be upheld if supported by inferences reasonably drawn from the record even if evidence exists to support another rational interpretation. *Batson,* 359 F.3d at 1193; *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995).

## DISCUSSION

### I.   Claims of Error

Roberts contends the ALJ failed to assess her RFC accurately because he improperly discredited her testimony, rejected the opinion of examining physician Thomas Westhusing, D.O., ignored the statements of lay witnesses, and failed to explain how Roberts's obesity restricted her ability to work. Roberts also contends the ALJ's erred at step four of the decision making process because her former work requires activities precluded by the ALJ's RFC assessment.

## II.    Credibility Determination

In her application, Roberts alleged she could not work because of arthritis in her hands, hips, and lower back, incontinence, the residual effects of an acoustic neuroma, including hearing loss in the left ear, damage to her balance nerve, and mild Bell's palsy affecting the left side of her face. Roberts alleged that headaches, muscle spasms, sleep apnea, and carpal tunnel syndrome interfered with her ability to work. She said her impairments made it difficult to lift things and to stand or sit for a full workday. Admin. R. 163.

At the administrative hearing, Roberts testified that she had an acoustic neuroma removed in 1983 after which she lost hearing in the left ear, developed minor Bell's palsy on the left side of her face, and experienced balance problems. Admin. R. 32, 35, 37, 39. She said she had difficulty understanding what people were saying to her in group situations. Admin. R. 40.

Roberts fell and fractured her right wrist in June 2007. The fracture healed, but Roberts continued to experience aching in the wrist in certain weather conditions, due to arthritis and carpal tunnel syndrome. Admin. R. 33. Roberts said that arthritis also affected her lower back and hips. Admin. R. 34-35. She complained of sleep apnea, incontinence, and muscle spasms all the way from her ankles to her neck. Admin. R. 34, 36. Roberts said she suffered migraines at least five times a month. Admin. R. 39. She was depressed and had acid reflux. Admin. R. 40-41. Roberts testified

that she lies down during the day at least three times a week for 20 minutes to an hour for headaches or fatigue. Admin. R. 44.

The ALJ accepted some of Robert's subjective statements. For example, he reduced Roberts's RFC to less than the full range of light work with limited walking, standing, and postural requirements, and no work at heights or around moving machinery based on her assertions of pain from arthritis, the limiting effects of obesity, and the residual effects of acoustic neuroma removal. Admin. R. 17. Indeed, the ALJ found her statements less than fully credible only insofar as she suggested that her symptoms were so limiting that she could not work within the restrictions of her RFC assessment. Admin. R. 16-17.

The ALJ found that Roberts's impairments could reasonably be expected to produce some of her alleged symptoms, and there was no evidence of malingering. Under such circumstances, an ALJ must assess the claimant's credibility regarding the severity of symptoms. An adverse credibility determination must include specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996). The findings must be sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In assessing credibility, an ALJ must consider all the evidence in the case record, including the objective medical evidence, the claimant's treatment history, medical opinions, daily activities, work history, the observations of third parties with knowledge of the claimant's functional limitations, and any other evidence that bears on the consistency and veracity of the claimant's

statements. *Tommasetti*, 533 F3d at 1039; *Smolen*, 80 F3d at 1284; SSR 96-7p, 1996 WL 374186, at *5.

The ALJ's decision demonstrates that he considered all the evidence relating to the proper factors for evaluating credibility. He provided a thorough discussion of the medical evidence, noting that some of Roberts's allegedly disabling impairments were unsupported by medical findings. For example, Roberts alleged significant impairment from incontinence, headaches, carpal tunnel syndrome, vertigo, and full body muscle spasms, but these conditions were not diagnosed by physicians and the record reflects that Roberts did not seek treatment for them. Admin. R. 14-15, 33, 35-36, 519-20. When a claimant makes subjective statements claiming disabling symptoms, but fails to seek treatment to alleviate such symptoms, the ALJ may draw an adverse inference as to the claimant's credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001); *Flaten v. Sec'y of Health & Human Serv.*, 44 F.3d 1453, 1464 (9th Cir. 1995).

The ALJ found that some of Roberts's allegedly disabling symptoms were controlled by treatment. For example, Roberts alleged significant impairment from sleep apnea, but this condition has been controlled with use of a CPAP device since 2003. Admin. R. 14, 385, 423. Roberts testified that the CPAP had become less effective in recent years, but as the ALJ pointed out, her failure to have this addressed by a physician suggests that it provides adequate relief. Admin. R. 14, 34. Similarly, Roberts's acid reflux appears to be controlled by medication and she said that her alleged migraines respond to over-the-counter headache medications like aspirin, Tylenol, and Excedrin. Admin. R. 14, 39, 42, 396, 408. Impairments that are effectively controlled by medication or improve from treatment are not disabling. *Warre v. Comm'r of Soc. Sec. Admin.,* 439 F.3d 1001,

1006 (9th Cir. 2006); *Morgan v. Comm'r* 169 F.3d 595, 599 (9th Cir. 1999); *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1998).

In his credibility determination, the ALJ discussed Roberts's treatment history, correctly noting that she has received minimal treatment during the period for which she claims disability, and what treatment she received has been routine and conservative. Admin. R. 20. Treatment that is conservative or minimal supports an adverse inference as to the claimant's credibility regarding subjective claims of disabling symptoms. *Parra v. Astrue*, 481 F3d 742, 750-51 (9th Cir. 2007); *Meanal v. Apfel*, 172 F3d 1111, 1114 (9th Cir. 1999).

The ALJ also accounted for the medical opinion evidence in his credibility analysis. The ALJ discussed the opinions of the agency reviewing experts and adopted most of their findings because they were consistent with the record as a whole. Admin. R. 18. The ALJ discounted the expert's opinion that Roberts should not climb, should limit gross manipulation with the right hand, and should avoid concentrated exposure to noise and vibration. The ALJ found these limitations unsupported by objective evidence and contrary to Roberts's reported daily activities. Admin. R. 18. Regarding Roberts's allegation of depression, the reviewing expert opined that she had mild depressive symptoms that did not cause work-related functional limitations. Admin. R. 535. This is consistent with the mental portion of Dr. Westhusing's evaluation. Admin. R. 519. The ALJ's evaluation of Dr. Westhusing's opinion is discussed below. In short, the medical opinions did not support Roberts's subjective claim that she cannot engage in work within the limitations of her RFC assessment.

The ALJ considered Roberts's work history. The record shows that Roberts worked as an accounts receivable representative and medical billing clerk for 15 years until she quit her job so that

she could move with her husband to a different part of the state. Admin. R. 20, 30-31, 45-46, 175. When a claimant stops working for reasons other than disability, the ALJ may draw an adverse inference as to the credibility of her disability claim. *Bruton*, 268 F.3d at 828. After moving, Roberts actively sought employment in her new location, supporting an inference that she believed she remained capable of engaging in work with appropriate restrictions. Admin. R. 18.

The ALJ also considered Roberts's daily activities, noting that she performs all personal care and typical household chores without assistance, navigates the stairs in her home, cares for a grandchild and a disabled husband, uses a computer and a telephone, knits, crochets, plays bingo, drives and generally appears to be less limited than she claims. Admin. R. 17-18. While these activities are not equivalent to a specific job description, they do support the ALJ's conclusion that Roberts is less limited than her subjective statements suggest.

The ALJ also identified inconsistent statements that suggest Roberts is less than fully candid. Admin. R. 18. For example, Roberts told Dr. Westhusing that she worked as a medical biller for 15 years but had to stop due to problems with her legs and hands. Admin. R. 518. At the hearing she testified that she stopped working because she moved to a different town when her husband had to relocate for a new job. Admin. R. 30-31.

Roberts argues that the ALJ improperly rejected her testimony that she has balance problems and difficulty understanding people in a group setting. The argument cannot be sustained for all the reasons already given. In particular, these limitations have been present since Roberts's acoustic neuroma surgery in 1983 and did not preclude her from performing her past work, which she quit for reasons unrelated to these limitations.

The ALJ's credibility determination included specific findings supported by substantial evidence and clear and convincing reasons. *Carmickle*, 533 F.3d at 1160; *Smolen*, 80 F.3d at 1281-82. His findings are sufficiently specific to permit me to conclude that he did not arbitrarily discredit Roberts's testimony. *Tommasetti*, 533 F.3d at 1039. Accordingly, the ALJ's credibility determination will not be overturned.

### III.    Lay Witness Statements

Roberts contends the ALJ improperly rejected the lay witness statements without giving reasons. An ALJ must consider the testimony of a lay witness, but may discount it for reasons germane to the witness. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). The ALJ's reasons must be supported by substantial evidence, but may appear anywhere in the decision without being tied directly to the evaluation of the lay witness statements. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

Here the ALJ separately discussed each of the lay witness statements and explained the reasons for the weight he gave them in his decision. Admin. R. 19-20. For example, Roberts's parents provided a statement regarding Roberts's functional limitations at work. Admin. R. 229-31. The ALJ discounted this statement because Roberts's parents were unable to observe Roberts at work and appeared to be repeating her subjective complaints. Furthermore, Roberts's parents lived in a different town from Roberts beginning before the alleged onset of her disability. Admin. R. 19.

Similarly, Linda Johnson provided statements that were not based on first-hand observations and appeared to be based on Roberts's subjective complaints. Admin. R. 20, 235-36, 714-17. Jorene Roberts and Patricia Ross provided statements based on first-hand observations, but these showed

that Roberts retained the ability to perform many light and sedentary tasks, albeit with some discomfort. Admin. R. 19-20, 232-34, 237-38, 703-06, 710-13. In general, the lay witness statements were consistent with Roberts's own subjective complaints and were susceptible to the same reasoning the ALJ provided in discounting Roberts's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1117-18 (9th Cir. 2012). That reasoning provides an adequate basis for the ALJ's evaluation of the lay witness testimony. *Valentine*, 574 F.3d at 694; *Lewis*, 236 F.3d at 512.

## VI.    Medical Opinion of Dr. Westhusing

Dr. Westhusing performed a disability evaluation of Roberts in December 2008. In the upper extremities, Roberts had full range of motion without evidence of muscle atrophy, full and symmetrical strength, normal reflexes and normal sensation. Roberts had full range of motion in the spine with a negative straight leg raise test and normal heel and toe walk test. She also had full range of motion in the hips, knees, and ankles, with full muscle strength and sensation in the lower extremities. A carpal tunnel examination was negative and her cranial nerves were intact except for the facial nerve on the left. Roberts had hearing loss in the left ear and a depression inventory suggested mild depression. Admin. R. 519. In short, Dr. Westhusing's findings were generally benign with the exception of one-sided hearing loss.

Dr. Westhusing then opined:

> I believe that she could function reasonably well in a clerical type sedentary work environment. I see no impairment in her use of either upper extremity. Would not recommend a work environment in which she is required to bend, stoop, crawl, squat, work at height or work above shoulder height.

Admin. R. 519.

The ALJ adopted all of the limitations in Dr. Westhusing's opinion except for his suggestion that Roberts should not work above shoulder level. Admin. R. 19. The ALJ correctly noted that this aspect of Dr. Westhusing's opinion contradicted his objective findings of full range of motion and strength in the upper extremities and his opinion that Roberts had no impairment in the use of either upper extremity. Admin. R. 19, 519.

The ALJ can reject an examining physician's opinion that is inconsistent with the opinions of other treating or examining physicians, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted opinion may be rejected for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57. The ALJ found Dr. Westhusing's opinion regarding work above shoulder level internally inconsistent and unsupported by his own findings. The reasoning is clear and convincing and will not be disturbed.

Roberts argues that the ALJ improperly discredited a different part of Dr. Westhusing's opinion regarding her claim of balance problems. Dr. Westhusing acknowledged Roberts's subjective complaint of balance problems. He said that it would be "conceivable" that vertigo might be associated with the acoustic neuroma surgery Roberts had experienced. In his examination, however, Dr. Westhusing found no nystagmus or other evidence of vertigo. Admin. R. 519. Roberts contends the ALJ failed to understand Dr. Westhusing's report. On the contrary, the ALJ's interpretation of this evidence is fully supported by inferences reasonably drawn from the record. Under such circumstances, the Commissioner's determination must be upheld, even if Dr. Westhusing's opinion could be interpreted differently, in a manner more helpful to Roberts. *Molina*,

674 F.3d at 1110; *Batson*, 359 F.3d at 1193 *Andrews*, 53 F.3d at 1039. The court is not free to substitute a different interpretation for that of the Commissioner if both are rational interpretations supported by inferences reasonably drawn from substantial evidence in the record. *Andrews*, 53 F.3d at 1039-40.

## V.   Obesity

Roberts contends the ALJ failed to explain with sufficient specificity which of her impairments were attributable to obesity. Plf.'s Br. 21. The ALJ discussed the medical evidence of Roberts's obesity. He referred to Dr. Westhusing's examination which showed that, despite her obesity and other impairments in combination, Roberts walked normally and had normal gait and station. The ALJ adopted the postural limitations in Dr. Westhusing's opinion, and the exertional limitations from the agency reviewing expert's opinion, based on the impact of Roberts's obesity on her ability to perform work-related activities. Admin. R. 17. I find no error in the ALJ's evaluation of Roberts's obesity.

## VI.   Vocational Evidence

At step four of the disability-determination process, the claimant bears the burden of showing that she can no longer perform her past work. 20 C.F.R. § 1520(e). Unless the claimant satisfies this burden, she will be found not disabled. *Barnhart v. Thomas*, 540 U.S. 20, 25 (2003). A claimant must show that she can perform neither the actual functional demands and job duties of a past relevant job as she performed it, nor the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Carmickle*, 533 F.3d at 1155.

Roberts contends the ALJ erred at step four because her past job had required her to stoop as much as one hour per day and the ALJ's RFC assessment precluded stooping. Plf.'s Br. 13-14.

Roberts's argument addresses only the functional requirements of her past work as she actually performed it. She failed to address the other prong, regarding the requirements of her work as it is generally performed. The VE testified that a person with all of the limitations in Roberts's RFC assessment, including the exclusion of stooping and a restriction to sedentary exertion, could perform the activities required in her past work as it is generally performed in the national economy. Admin. R. 46-47. Accordingly, Roberts failed to show that she cannot perform the functional demands and job duties of her past occupation as generally required by employers throughout the national economy. *Carmickle*, 533 F.3d at 1155.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

DATED this 29 th day of October, 2013.

Robert E. Jones, Senior Judge
United States District Court